1

2

3

4

5          **IN THE UNITED STATES DISTRICT COURT**

6              **FOR THE DISTRICT OF ARIZONA**

7

8    Anthony Micheal Grzyb-Lopez,          No. CV 23-00271 PHX SRB (CDB

9                        Plaintiff,        **REPORT AND**
                                           **RECOMMENDATION**
10   v.

11   D. Fraser,

                         Defendant.
12

13   **TO THE HONORABLE SUSAN R. BOLTON:**

14          Before the Court is Plaintiff's motion to amend the operative complaint. (ECF

15   No. 42).

16          **I.      Background**

17          Plaintiff, who is in custody, initiated this matter by filing a pro se § 1983 complaint

18   on February 10, 2023. (ECF No. 1). The Court construed the Complaint as follows:

19              In his one-count Complaint, Plaintiff sues Defendants Arizona
                Department of Public Safety Gang Task Force Officers John Does 1 and 2,
20              alleging he was subjected to excessive force during his arrest [on September
                17, 2021], in violation of the Fourth Amendment. He seeks monetary
21              damages and injunctive relief.

22              Plaintiff claims Defendants arrested him on an outstanding warrant.
                He alleges that after his hands were cuffed behind his back and Defendant
23              Doe 1 was holding him down in a prone position, Defendant Doe 2 "took
                two running steps and kicked [him] with full force, square in the face, twice."
24              After this, Defendant Doe 2 "proceeded to take the Plaintiff into custody, and
                relinquished control over Plaintiff to a sep[a]rate, uninvolved … officer for
25              transport." Plaintiff contends he suffered permanent nerve damage in his
                face; permanent and persistent neurological, psychological, and emotional
26              trauma; facial numbness; migraine headaches; and Post-Traumatic Stress
27              Disorder.

28

1  (ECF No. 15 at 3).

2      On June 6, 2023, Plaintiff was given leave to proceed *in forma pauperis* and the

3  Court dismissed Defendant John Doe 1 without prejudice. (ECF No. 15). On June 16, 2023,

4  the Court allowed Plaintiff 120 days to discover the identity of Defendant John Doe 2 and

5  to file a notice of substitution as to this Defendant's true identity. (ECF No. 18). On July 11,

6  2023, the Court required Plaintiff to file the notice of substitution no later than October 16,

7  2023. (ECF No. 21). Plaintiff failed to comply with the order at ECF No. 21, and

8  accordingly on November 6, 2023, judgment was entered against Plaintiff and the case was

9  dismissed. (ECF No. 23).

10     On December 22, 2023, Plaintiff sought reconsideration of the order of judgment.

11  (ECF No. 25). Plaintiff's motion for reconsideration was granted on January 4, 2024, and

12  the Court ordered Glover, the Director of the Arizona Department of Public Safety, to

13  provide, via subpoena, "the incident reports from the September 17, 2021 arrest of

14  Plaintiff." (ECF No. 26 at 2-3). The deadline for Plaintiff to file a notice of substitution

15  was stayed until Glover produced the requested information. (ECF No. 26 at 3).

16     On January 26, 2024, Plaintiff filed an Amended Complaint (ECF No. 29) naming

17  only Defendant Fraser as a defendant. In the Amended Complaint Plaintiff alleged "C.

18  Corwin" held him down in the prone position and handcuffed him, and Defendant Fraser

19  then took "two running steps towards the Plaintiff and kicked the Plaintiff in the face twice,

20  with full force, then proceeded to take the Plaintiff into custody." (ECF No. 29 at 3). The

21  statement of facts in the Amended Complaint is identical to the statement of facts in the

22  Complaint except that the names and badge numbers of Corwin and Fraser were substituted

23  for John Doe 1 and John Doe 2, respectively. (*Id.*).

24     On March 13, 2024, Plaintiff was ordered to complete a service packet for

25  Defendant Fraser and return it to the Court no later than April 3, 2024. (ECF No. 30). On

26  May 13, 2024, Plaintiff was allowed until May 20, 2024, to show cause why the Amended

27  Complaint should not be dismissed for Plaintiff's failure to comply with the order issued

28  March 13, 2024. (ECF No. 31). On May 21, 2024, Plaintiff was provided with another

service packet and Plaintiff was allowed until July 22, 2024, to effect service on Defendant Fraser via the United States Marshal. (ECF No. 33). Service on Defendant Fraser was returned as unexecuted, and Glover was ordered to provide a last known address for Defendant Fraser. (ECF No. 35). Defendant Fraser was served on August 19, 2024. (ECF No. 38). On September 9, 2024, Defendant Fraser was allowed until October 9, 2024, to answer or otherwise respond to the Amended Complaint. (ECF No. 41).

On October 8, 2024, Plaintiff filed the pending motion to amend his complaint (ECF No. 42) and lodged a proposed second amended complaint (ECF No. 43).

Defendant Fraser answered the Amended Complaint on October 9, 2024. (ECF No. 45). An order issued October 10, 2024, requiring any motion to further amend the operative complaint be filed by November 15, 2024, that discovery be completed no later than January 24, 2025, and that dispositive motions be filed no later than April 25, 2025. (ECF No. 46).

Defendant Fraser docketed a response to Plaintiff's motion to amend his complaint on October 22, 2024 (ECF No. 49) and Plaintiff did not timely filed a reply in support of his motion to amend at ECF No. 42.

## II.    Governing Law

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).[1] The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

Rule 15(a) of the Federal Rules of Civil Procedure provides a plaintiff should be given leave to amend their complaint when justice so requires. Granting or denying leave to amend is a matter committed to the Court's discretion. *E.g.*, *Hartmann v. California*

---

[1] Plaintiff's proposed second amended complaint does not comply with Rule 15.1 of the Local Rules of Civil Procedure. Nonetheless, the proposed second amended complaint will be screened in the interest of judicial efficiency.

*Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1129 (9th Cir. 2013). Before granting leave to amend, Rule 15(a) requires the Court to evaluate the elements of bad faith, undue delay, prejudice to the opposing party, and futility of amendment. *See*, *e.g.*, *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010). Leave to amend may be denied when allowing a plaintiff to proceed on an amended complaint would delay the on-going proceedings, or when the amendment seeks to add new claims unrelated or only tangentially related to the original allegations. *See*, *e.g. Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1043 (9th Cir. 1996); *Eckard v. Langdon*, No. 21-35729, 2023 WL 6129523, at *1 (9th Cir. 2023). Relevant to the factor of undue delay is "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990). In evaluating undue delay, the Court should consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading," and whether "permitting an amendment ... would produce an undue delay in the litigation." *Id.* at 1387.

Futility of amendment is sufficient to justify denial of leave to amend. *See*, *e.g.*, *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010). A proposed amended complaint is futile if, accepting all of the facts alleged as true, it would be immediately "subject to dismissal" for failure to state a claim on which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *Riverview Health Inst. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Jones v. Town of Quartzsite*, 677 F. App'x 317, 318 (9th Cir. 2017). Futility is also found when the amended complaint would, on its face, be subject to dismissal based on the applicable statute of limitations. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008); *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980); *Doering v. Lamb*, No. 20-cv-00404, 2022 WL 2760056, at *9 (D. Ariz. May 27, 2023), *report and recommendation adopted*, 2022 WL 2753773 (D. Ariz., July 14, 2022); *Consiglio v. Brown*, No. 16-cv-01268, 2019 WL 2153138, at *9 (E.D. Cal. May 17, 2019), *report and recommendation adopted*, 2019 WL

6338117 (E.D. Cal. Nov. 27, 2019), *aff'd sub nom. Consiglio v. Ahlin*, 837 F. App'x 508 (9th Cir. 2021). *Cf. Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001) (noting, in a takings action, that failure to file a claim within the statute of limitations renders a proposed amendment futile).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Additionally, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 A plaintiff must state sufficient plausible factual allegations "to raise a right to relief above the speculative level." *Id.* "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Court is obliged to liberally construe an incarcerated pro se plaintiff's complaint. *See*, *e.g.*, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, although pro se pleadings are liberally construed, conclusory and vague allegations will not support a cause of action. *E.g.*, *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Additionally, "legal conclusions couched as factual allegations are not given a presumption of truthfulness and conclusory allegations of law and unwarranted inferences are not sufficient" to state a claim for relief that will survive a motion to dismiss. *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1220 (D. Ariz. 2003) (internal quotations omitted). Furthermore, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id. See also Litmon v. Harris*, 768 F.3d 1237, 1241 (9th

Cir. 2014). The Court need not assume the plaintiff "can prove facts different from those alleged in the complaint." *McGrath*, 250 F. Supp. 2d at 1220.

To prevail in a § 1983 claim, a plaintiff prisoner must show an act by the named defendant, taken under color of state law, which deprived the plaintiff of a federal constitutional right, and caused the plaintiff harm. *See*, *e.g.*, *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005). Additionally, a plaintiff must allege they suffered a specific injury as a result of the conduct of a particular defendant, and must also sufficiently allege an affirmative link between the injury and the conduct of that defendant. *E.g.*, *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). A claim may be properly dismissed when the pleading lacks specific factual allegations showing the named defendant's participation in the alleged constitutional violation. *See Iqbal*, 556 U.S. at 678; *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988); *Carey v. Von Blanckensee*, 515 F. Supp. 3d 1051, 1055 (D. Ariz. 2021). To survive screening, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194.

The use of excessive force by law enforcement officers in the course of an arrest can violate the arrestee's Fourth Amendment right to be free from unreasonable seizures. *See White by White v. Pierce Cnty.*, 797 F.2d 812, 816 (9th Cir. 1986). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006); *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003).

Additionally, law enforcement officers "have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Rodriguez v. County of Los Angeles*, 96 F. Supp. 3d 990, 1002 (C.D. Cal. 2014). "[A]n officer who failed to intercede when his

colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights." *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021). However, law enforcement officers can be held liable for failing to intervene only if the officer had a "realistic opportunity" to intervene. *See Cunningham*, 229 F.3d at 1290. *See also Ortiz v. Kazimer*, 811 F.3d 848, 853 (6th Cir. 2016) (holding police officers are "liable for failing to stop ongoing excessive force when they observe it and can reasonably prevent it."); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (holding a police officer had a duty to intervene when he witnessed the use of excessive force and had the ability to intervene); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1163 (N.D. Cal. 2009) ("A reasonable officer could not have reasonably but mistakenly believed that he had no duty to intervene to stop another officer in their immediate presence from inflicting excessive force on a subject *when they could have prevented it*."). *See also Fernandez v. Virgillo*, No. 12-cv-02475, 2014 WL 2930749, at *7 (D. Ariz. June 30, 2014), *citing*, *e.g.*, *Cunningham*, 229 F.3d at 1290, *and O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (holding an officer present at the scene was not liable where the trial evidence showed "three blows were struck in such rapid succession that [the officer] had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.").

"[S]upervisory officials may not be held liable under § 1983 on the basis of respondeat superior, but only for their own wrongful behavior." *McGrath*, 250 F. Supp. 2d at 1222, *citing Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). A supervisor "can be held liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation[;] or for conduct that showed a reckless or callous indifference to the rights of others." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotations omitted, bracketing in original). However, "mere failure to act in the

face of the constitutional violations fail[s] to provide a sufficient basis for imposing § 1983 liability." *McGrath*, 250 F. Supp. 2d at 1223. "[S]omething more than mere failure to control must be shown in order to hold the supervisor liable for his own alleged wrongs." *Id.* "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

"In limited circumstances a supervisor's subsequent 'ratification' of another's conduct can form the basis for liability under § 1983." *Peschel v. City of Missoula*, 686 F. Supp. 2d 1092, 1102 (D. Mont. 2009), *citing Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) ). However, "[t]he mere failure to discipline does not show condoning or ratification." *Booke v. City. of Fresno*, 98 F. Supp. 3d 1103, 1129 (E.D. Cal. 2015). To survive screening the plaintiff must assert facts, rather than simply conclusions, plausibly establishing the supervisor was personally involved in the deprivation of the plaintiff's civil rights. *See Maxwell v. City of San Diego*, 708 F.3d 1075, 1097 (9th Cir. 2013) ("[T]here is no respondeat superior liability under § 1983. Rather, a government official may be held liable only for the official's own conduct.").

## III. Analysis

The proposed second amended complaint adds as Defendants Jeffrey Glover, the Director of the Arizona Department of Public Safety ("DPS"), and DPS officer C. Corwin.

In Count One of the proposed second amended complaint Plaintiff reasserts his Fourth Amendment claim for excessive force against Defendant Fraser. (ECF No. 43 at 3).

Count Two of the proposed second amended complaint asserts a claim for "Fourth Amendment unreasonable deliberately indifferent excessive force search/seizure/arrest" against Glover. (ECF No. 43 at 6). Plaintiff alleges Glover's: (1) "deliberately indifferent failure, and inaction as ADPS Director, to properly implement, disseminate and enforce an appropriate Department use of force policy;" (2) failure to properly train DOS officers; and (3) failure to "investigate officer use of force complaints" and discipline officers for excessive use of force, "directly and indirectly," resulted in Fraser and Corwin's "excessive

use of force against Plaintiff …" (*Id.*). Plaintiff contends "[s]upervisory level authorities, like and including Defendant Glover, are just as responsible, negligent, and liable as their subordinates, and should be held accountable as such." (*Id.*).

Plaintiff fails to plausibly allege sufficient specific facts to support a claim that Glover was personally involved in the deprivation of Plaintiff's civil rights by Fraser, or that Glover participated in or directed the violations, or Glover knew of the violations and failed to act to prevent them.

Count Three of the proposed second amended complaint states a Fourth Amendment claim for excessive force against Corwin. (ECF No. 43 at 8). Plaintiff asserts Corwin is liable for a violation of Plaintiff's constitutional rights because Corwin "failed to intervene, prevent, or stop Defendant Fraser, physically or verbally, from kicking, or continuing to kick, Plaintiff in his face." (*Id.*). Plaintiff alleges Corwin did not physically or even verbally intervene to stop Fraser's "unlawful attack on Plaintiff," thereby "demonstrat[ing] deliberate indifference." (ECF No. 43 at 9). Plaintiff contends that "even after the first kick to Plaintiff's face, at no time did [] Corwin even attempt to intervene or stop Defendant Fraser's attack on Plaintiff …" (*Id.*).

Other than the allegations Plaintiff stated in the Complaint against "John Doe 1," Plaintiff does not add additional factual allegations against Corwin in the proposed second amended complaint.

In the Complaint Plaintiff alleged:

During [the arrest on September 17, 2021] I was handcuffed behind my back and held down in the prone position by one D.P.S. officer (John Doe #1 …). As I was held down already handcuffed by (John Doe #1), [Fraser] took two running steps and kicked the Plaintiff will full force square in the face, <u>TWICE</u>, then proceeded to take the Plaintiff into custody …

(ECF No. 1 at 3) (emphasis in original).

In the screening order the Court concluded Plaintiff failed to state a claim against "John Doe 1," stating:

Plaintiff's allegations do not support a conclusion that any force Defendant Doe 1 used was excessive. He has therefore failed to state an excessive force claim against Defendant Doe 1.

In addition, officials can be held liable for failing to intercede when their fellow officers violate constitutional rights, and the officials have a reasonable opportunity to intercede. *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000); *see also Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Plaintiff has not alleged sufficient facts to support a conclusion that Defendant Doe 1 had a reasonable opportunity to intervene and failed to do so.

(ECF No. 15 at 15).

In his proposed second amended complaint, Plaintiff alleges:

During this September 17, 2021 arrest of Plaintiff, Plaintiff was handcuffed behind his back while lying face down on his stomach and held down in this prone position by Detective Corwin, while Defendant Fraser, in an objectively unreasonable excessive use of force, then took two running steps towards Plaintiff, and with full momentum and force, Defendant Fraser maliciously and sadistically kicked Plaintiff twice in his face …

(ECF No. 43 at 3).

Plaintiff also asserts "Defendant Corwin was employed by the Arizona Department of Public Safety Gang Task Force Division," and Corwin was Fraser's "partner during Defendant Fraser's objectively unreasonable maliciously sadistic excessive use of force attack on Plaintiff." (ECF No. 43 at 8). Plaintiff further alleges that, during the use of force,

Defendant Corwin not only held Plaintiff handcuffed behind his back down in the prone position on his stomach while Defendant Fraser maliciously and sadistically kicked Plaintiff twice in his face, but Defendant Corwin also failed to intervene, prevent, or stop Defendant Fraser physically or verbally, from kicking, or continuing to kick, Plaintiff in his face.

(ECF No. 43 at 8).

The Court previously concluded Plaintiff had "not alleged sufficient facts to support a conclusion that [Corwin] had a reasonable opportunity to intervene and failed to do so." (ECF No. 15 at 15). Plaintiff's proposed second amended complaint does not add any additional *factual* allegations to those stated in the Complaint with regard to the timing of Fraser's attack or indicating Corwin had a "reasonable opportunity to intervene." Instead

Plaintiff adds conclusory allegations that Corwin "failed to intervene, prevent," or stop Fraser from kicking Plaintiff, and that Corwin failed to verbally or physically prevent Fraser from kicking "or continuing to kick" Plaintiff. Plaintiff fails to overcome the Court's prior conclusion that he can state sufficient facts to support a conclusion that Corwin had a reasonable opportunity to intervene and failed to do so. Plaintiff alleges Fraser took two "running" steps and kicked Plaintiff twice, in succession, in the face. This incident apparently happened quite quickly, and Plaintiff's statement of facts indicates Fraser did not "continue to kick" Plaintiff but kicked him twice and then Plaintiff was "formally" arrested and taken to jail. (ECF No. 43 at 4).

Additionally, Plaintiff does not explain the undue delay in moving to amend his complaint to state a claim against Corwin or Glover. Plaintiff's claim against "John Doe 1" was dismissed June 6, 2023 (ECF No. 15), and seven months later when Plaintiff filed his Amended Complaint (ECF No. 29) on January 26, 2024, Plaintiff identified Corwin as "John Doe 1" but did not state a claim against either Corwin or Glover, whose identity as the Director of DPS was known to Plaintiff at that time. Plaintiff proffers no reason for now seeking, eight months later, to add Corwin and Glover as Defendants. Plaintiff has unduly delayed adding these individuals as Defendants, and allowing Plaintiff to add additional Defendants and claims would unduly delay resolution of Plaintiff's claim against Fraser as it is unlikely these Defendants would be served and appear prior to the deadline for completing discovery in this matter, providing Defendants answered the Amended Complaint rather than filing motions to dismiss pursuant to Rule 12(b)(6).

Accordingly,

**IT IS RECOMMENDED that** Plaintiff's motion (ECF No. 42) seeking leave to amend his complaint be **denied**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this

recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 7(b)(2). Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2(e)(3), Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 19th day of November, 2024.

Camille D. Bibles
United States Magistrate Judge